UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JULIUS GIVENS, an individual,** ) | |
| *Plaintiff*, ) | |
| ) | No. 1:26-cv-2276 |
| v. ) | |
| ) | Jury Trial Demanded |
| **City of Chicago, a municipal corporation,** ) | |
| *Defendant.* ) | |

## COMPLAINT

Plaintiff Julius Givens, by and through his attorneys, hereby complains of Defendant City of Chicago, a municipal corporation, as follows.

### NATURE OF THE ACTION

1. Plaintiff Julius Givens brings this action against his employer, the City of Chicago, to remedy significant harms he has suffered on account of Defendant's racially discriminatory acts. Officer Givens has been a Chicago police officer since 2019. After years of outstanding performance, which has earned him numerous awards, Givens applied for one of the CPD's specialized units, specifically the Special Weapons and Tactic ("SWAT") unit. Despite repeatedly posting some of the highest scores in the objective assessments, Officer Givens was rejected on subjective and pretextual grounds. This rejection was part of CPD's long-standing and unconstitutional custom, practice, or policy of discriminating against Black officers who apply for specialized units, including specifically SWAT, resulting in a gross under-representation of Black SWAT members and a gross over-representation of White SWAT officers. Givens now brings this action to be made whole and recover lost wages, compensatory damages, including for emotional distress, attorney's fees and costs, and all other monies deemed owed to him for the discrimination and other suffering he has been forced to endure.

## JURISDICTION AND VENUE

2. Jurisdiction is provided by 28 U.S.C. §1331 as Givens has been deprived of rights guaranteed to him under the Constitution of the United States of America, the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1981.

3. The Court has supplemental jurisdiction over Givens's state law claims pursuant to 28 U.S.C. § 1367(a).

4. This action properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this claim occurred in this judicial district.

5. In response to the City's discriminatory and unlawful treatment of Givens, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Illinois Department of Human Rights ("IDHR").

6. Givens has been issued a Notice of Right to Sue by the EEOC and has notified the IDHR of the same. As such, Givens will shortly receive formal notice of his right to sue from the IDHR as well.

7. Givens has, thus, exhausted all administrative prerequisites.

## PARTIES

8. Plaintiff Julius Givens, an individual, is a Black citizen of the State of Illinois who was, at all relevant times, employed by Defendant City of Chicago as a police officer for the Chicago Police Department.

9. Defendant City of Chicago is an Illinois municipal corporation located in Cook County, Illinois.

10. At all times relevant hereto, the City of Chicago was a covered employer and Givens an employee for purposes of the Civil Rights Act of 1964, as amended.

**FACTUAL ALLEGATIONS**

11. Plaintiff Julius Givens began working as a police officer for Defendant City of Chicago in May 2019.

12. As a police officer, Givens performed exceptionally well and earned a multitude of awards, including two Life Saving Awards, a Crime Reduction Award, at least three Department Commendations, dozens of Honorable Mentions, a Police Officer of the Month Award, and a Valor Award.

13. In late 2023, Givens applied for a position with the CPD's SWAT unit, a specialized unit and coveted assignment within the department that provides a higher salary, increased overtime opportunities, and other career and compensation opportunities not available to patrol officers.

14. SWAT is notorious within the CPD for refusing to hire Black officers.

15. Upon information and belief, there has been only 1 Black SWAT member since 2017.

16. In contrast, Black officers have comprised approximately 20% of the CPD's overall police officers during that same time.

17. The percentage of Black officers in the applicant pool for SWAT has been consistent with the percentage of overall Black officers within the CPD, yet SWAT has consistently only accepted 1% of Black applicants.

18. Conversely, the percentage of White SWAT members has far exceeded the percentage of both overall White members of the CPD and percentage of White applicants to SWAT every year for at least the past five years.

3

19. These disparities have resulted in a gross under-representation of Black officers assigned to SWAT and a gross over-representation of White officers assigned to SWAT.

20. The disparity is well known throughout the CPD. Indeed, when Givens informed his colleagues he was applying for SWAT, he was told, "you know SWAT doesn't take Blacks," or words to that effect.

21. Nevertheless, Givens, who was highly qualified for SWAT, submitted his application in late 2023.

22. The SWAT selection process is broken down into two "Phases" with several "Stages" in each.

23. Phase 1 is comprised of three Stages, which include physical fitness and shooting assessments measured entirely on an objective basis.

24. Those applicants who successfully pass Phase 1 then begin Phase 2, which is a four-week long process comprised of four Stages.

25. Applicants in Phase 2 are judged on a mix of objective and subjective criteria.

26. The subjective criteria in Phase 2 provide SWAT evaluators with unchecked power to subjectively determine who to select for assignment to the SWAT specialized unit.

27. Upon information and belief, hundreds of officers applied for the late 2023/early 2024 SWAT selection cycle.

28. Givens applied and performed very well in Phase 1, earning the highest score in several physical tests.

29. Based on his objectively excellent performance, Givens was one of 22 applicants who advanced to Phase 2 in February/March 2024.

30. Throughout Phase 2, Givens excelled on the objective criteria, earning a 95% and 97.5% on his written exams, 100% on his pistol shooting assessments, and a 90% on his rifle shooting assessment.

31. Givens also performed very well on the subjective criteria, outperforming other applicants.

32. Based on his outstanding performance, Givens was one of 11 applicants to complete both Phases of the program and have his name submitted to the review board.

33. To his surprise, Givens then learned that his SWAT evaluators had ranked him 11th out of the 11 remaining applicants.

34. The SWAT evaluators based their ranking of Givens on the subjective criteria.

35. The SWAT evaluators provided false and/or contrived reasons to justify Givens' ranking and failure to be selected for SWAT.

36. Only the top seven applicants were offered positions on SWAT. None were Black.

37. The disparity between Black and non-Black applicants accepted to SWAT is too pervasive to be unintended.

38. The CPD's differential treatment of Black applicants to SWAT is part of a custom, practice, and policy of discriminating against Black officers who apply to join specialized units, including SWAT, by using subjective, non-blinded assessments and criteria as a proxy for race discrimination.

39. At all times relevant herein, the City acted pursuant to this well-established custom, practice, and policy that harms Black officers.

40. The City of Chicago, including the CPD, has a systemic problem with race discrimination against Black people, including its own employees, as reflected in the statistical

hiring data into specialized units such as SWAT and as additionally reflected in the CPD's failures to combat known race discrimination within the agency.

41. In 2022, then-Chicago mayor Lori Lightfoot created the Office of Equity and Racial Justice ("OERJ") aimed at "combating systemic racism and addressing the root causes of racial and social inequity throughout the City's government…"

42. The CPD was required to create a Racial Equity Action Plan ("REAP") in which it admitted to having "discriminatory practices" and "systemic biases" and additionally acknowledged that "racial injustice has deep historical roots within our organization."

43. Despite these admissions, the CPD has failed to take legitimate actions to stop internal racial discrimination.

44. For example, CPD's REAP received the very lowest rating it could obtain from the OERJ. Rated "transactional", CPD was found to have focused only on "short-term gains for communities impacted but leav[ing] the existing structure in place," which structure has led to systemic discriminatory practices.

45. By making final decisions based on subjective criteria, the CPD has permitted unlawful and unconstitutional discrimination to infect the promotions process, which it has done historically and continues to do today.

46. On account of the City's unlawful conduct, as well as its custom, practice, and policy of race discrimination against Black officers seeking promotions to specialized units, including SWAT, Givens has suffered significant damages, including a loss of employment opportunities, compensation, employment benefits, emotional distress, and reputational damage.

# COUNT I

### RACE DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. §§ 2000e, *et seq*.

47. Givens re-alleges paragraphs 1-46 above and incorporate them as though fully set forth herein.

48. Title VII, as amended by the Civil Rights Act of 1991, makes it unlawful to "discharge any individual, or otherwise discriminate" against any individual "because of such individual's" race. 42 U.S.C. 2000e, *et seq*.

49. Givens is a member of a protected group based on his race (Black).

50. By its conduct as alleged herein, the City discriminated against Givens on account of his race in violation of Title VII by subjecting him to disparate and adverse treatment, including by refusing to assign him to a specialized unit because of his race.

51. The City treated Givens less favorably than similarly situated employees who are not Black.

52. The City additionally utilizes an application and selection process that has a disparate impact on Black applicants.

53. The City's conduct toward Givens illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination.

54. As a result of the City's unlawful conduct, Givens has suffered injuries including but not limited to the loss of compensation, employment benefits, employment and career opportunities, damage to his reputation, and emotional distress.

55. Givens demands to exercise his right to a jury trial of this matter.

## COUNT II

### RACE DISCRIMINATION
### 42 U.S.C. § 1981

56. Givens re-alleges paragraphs 1-46 above and incorporates them as though fully set forth herein.

57. 42 U.S.C. §1981 makes it unlawful to discriminate against any person in the terms and privileges of employment or to take any adverse action on account of race.

58. Givens is a member of a protected group based on his race (Black).

59. By its conduct as alleged herein, the City intentionally discriminated against Givens on account of his race by subjecting him to disparate and adverse treatment, including by refusing to assign him to a specialized unit because of his race.

60. The City treated Givens less favorably than similarly situated employees who are not Black.

61. The City's conduct toward Givens illustrated a willful and/or reckless disregard of his right to be free from race discrimination.

62. As a result of the City's unlawful conduct, Givens has suffered injuries including but not limited to the loss of compensation, employment benefits, employment and career opportunities, damage to his reputation, and emotional distress.

63. Plaintiff demands to exercise his right to a jury trial of this matter.

## COUNT III

### RACE DISCRIMINATION — EQUAL PROTECTION
### 42 U.S.C. § 1983—*Monell* claim

64. Givens re-alleges Paragraphs 1-46 and incorporates them as if fully set forth herein.

65. At all times relevant, the City of Chicago has acted under the color of law.

66. The City's intentional race discrimination against Givens and other Black Chicago police officers applying for specialized units was so widespread and well-settled as to constitute a custom, practice, and standard operating procedure of the City, the *de facto* equivalent of a formal policy of race discrimination with the force of law.

67. By its conduct as alleged herein, the City deprived Givens of his right to be equal protection right to be free from race discrimination.

68. The City's conduct toward Givens illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination.

69. As a result of the City's unlawful conduct, Givens has suffered injuries including but not limited to the loss of compensation, employment benefits, employment and career opportunities, damage to his reputation, and emotional distress.

70. Givens demands to exercise his right to a jury trial of this matter.

## COUNT IV

### RACE DISCRIMINATION
### ILLINOIS HUMAN RIGHTS ACT
### 775 ILCS 5/1-103 *et seq.*

71. Givens re-alleges paragraphs 1-46 above and incorporates them as though fully set forth herein.

9

72. The Illinois Human Rights Act makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

73. Givens is a member of a protected group based on his race (Black).

74. By its conduct as alleged herein, the City intentionally discriminated against Givens on account of his race by subjecting him to disparate and adverse treatment in violation of the Illinois Human Rights Act, including by refusing to assign him to a specialized unit because of his race.

75. The City treated Givens less favorably than similarly situated employees who are not Black.

76. The City's conduct toward Givens illustrated a willful and/or reckless disregard of Givens's right to be free from race discrimination.

77. As a result of the City's unlawful conduct, Givens has suffered injuries including but not limited to the loss of compensation, employment benefits, employment and career opportunities, damage to his reputation, and emotional distress.

78. Givens demands to exercise his right to a jury trial of this matter.

**COUNT V**

**RACE DISCRIMINATION
ILLINOIS CIVIL RIGHTS ACT
740 ILCS 23/5**

79. Givens re-alleges Paragraphs 1-46 and incorporates them as though fully set forth herein.

89. The Illinois Civil Rights Act makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

90. Givens is a member of a protected group based on his race (Black).

91. By its conduct as alleged herein, the City subjected Givens to discrimination on

the basis of his race, in violation of 740 ILCS 23/5.

92. The City's conduct toward Givens illustrated a willful and/or reckless disregard of his right to be free from race discrimination.

93. As a result of the City's unlawful conduct, Givens has suffered injuries including but not limited to the loss of compensation, employment benefits, employment and career opportunities, damage to his reputation, and emotional distress.

**WHEREFORE**, Plaintiff, Julius Givens, respectfully requests that this Court find in his favor and against Defendant City of Chicago on Counts I-V as follows:

a. Declare Defendant's conduct was in violation of the laws set forth in Counts I-V;

b. Award Givens the value of compensation and benefits he has lost and will continue to lose;

c. Award Givens damages for emotional distress and other compensatory damages he has suffered and will continue to suffer in the future;

d. Award Givens make whole relief;

e. Award Givens reasonable attorney's fees, costs, and disbursements;

f. Enjoin the City and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g. Enjoin the City and all officers, agents, and employees to institute and carry out all policies and practices to comply with federal and state law to provide equal employment opportunities for all and to prevent discrimination; and

h. Award Givens any and all other relief as the Court deems just.

                                                Respectfully submitted,

                                                JULIUS GIVENS, Plaintiff

                                By:    /s/ Megan O'Malley
                                         One of *Plaintiff's Attorneys*

M. Megan O'Malley
John P. Madden
Alexandra L. Raynor
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
momalley@ompc-law.com

                                By:    /s/ Torreya L. Hamilton
                                           One of *Plaintiff's Attorneys*

Hamilton & Hennessy, LLC
53 West Jackson Boulevard
Suite 620
Chicago, IL 60604
Phone: 312.726.3173
Fax: 312.726.3157
tlh@hamiltonhennessy.com